UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.   No. 3:23-cr-222 (JAM)

JERMAINE BETHEL,
    *Defendant*.

ORDER RE FACTUAL BASIS
FOR GUILTY PLEA OF DEFENDANT JERMAINE BETHEL

    As discussed with the parties at yesterday's scheduled sentencing hearing for defendant Jermaine Bethel, my re-review of the record in this case has raised a question about whether there is a proper factual basis for Bethel's guilty plea to conspiracy to commit a Hobbs Act robbery. This order sets forth my concerns and requests that the parties file any memoranda or other response on or before **July 15, 2024**.

    Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires a court to determine that there is a factual basis for a guilty plea. The Second Circuit has recently elaborated on the requirements of this rule. "Specifically, the court must assure itself . . . that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty," and also "assess whether, based on the facts at its disposal including but not limited to the defendant's own admissions, the offense conduct satisfies the elements of the statute under which the defendant seeks to plead guilty." *United States v. Aybar-Peguero*, 72 F.4th 478, 483 (2d Cir. 2023).[1] Ultimately, a judge must "be assured that the defendant is aware not only of the elements of the crime with which he is charged, but also that the specific conduct committed satisfies those elements." *Id.* at 486.

---

[1] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

Bethel has previously appeared before the Court to enter a plea of guilty to a charge of conspiracy to commit a Hobbs Act robbery in connection with a plan he joined with his three co-defendants—Andy Marte, Kareem Porter, and Tyrone Allen—to steal narcotics and/or narcotics proceeds from an apartment in Bridgeport, Connecticut. The crime of conspiracy to commit a Hobbs Act robbery requires more than an agreement to commit a burglary or to steal property. It requires evidence that the defendant knowingly and willfully joined a plan with an objective to take property by means of the use or threatened use of force, violence, or fear of injury against another person or property. *See United States v. Santos*, 449 F.3d 93, 100–02 (2d Cir. 2006) (discussing requirement for Hobbs Act robbery conspiracy of a "plan to use Hobbs Act force" as distinct from a plan to merely burglarize); 18 U.S.C. § 1951(b)(1) (defining the term "robbery" for purposes of the Hobbs Act).[2]

The parties entered into a written stipulation of offense conduct as part of the plea agreement.[3] Although the stipulation uses the term "robbery," it makes no reference to or includes facts to suggest an agreement to use force or even the anticipated or intended use of force. It states that "the plan was to steal narcotics and narcotics proceeds from an apartment" and that "my intention was to steal narcotics and narcotics proceeds."[4] It further states that Bethel wore "a surgical mask in order to hide [his] face and prevent identification by law enforcement," as distinct from concealing his identity from any possible occupant or victim of intended force inside the apartment.[5] In short, the stipulation of offense conduct does not appear

---

[2] "The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." 18 U.S.C. § 1951(b)(1). In this ruling I use the term "use of force" as shorthand to refer to the statutory requirement of "actual or threatened force, or violence, or fear of injury, immediate or future" to a person or their property.
[3] Doc. #91 at 9.
[4] *Ibid.*
[5] *Ibid.*

to set forth facts sufficient to show that Bethel knowingly and willfully agreed to commit or take part in a Hobbs Act robbery.

Nor is it readily apparent that the plea colloquy was enough to remedy the apparent shortcoming of the stipulation. During the plea colloquy, Bethel answered "yes" to the following series of questions:

> So, am I correct that on April 28, 2023, you entered into an agreement with at least one other person in Bridgeport, Connecticut to commit a robbery?
>
> And the intent of the robbery was to steal narcotics and narcotics proceeds from an apartment located in Bridgeport, Connecticut?
>
> And you were one of the individuals that intended to participate in this robbery?
>
> And did you do that intentionally, knowingly, and willfully?
>
> Was it the intent of at least one member of this group, even if it wasn't you, to use force if necessary to carry out the robbery?

Although Bethel answered "yes" to whether he agreed with at least one other person "to commit a robbery," it is unclear whether he conflated the meaning of a robbery with a burglary or larceny, consistent with his answer to the next question that asked if "the intent of the robbery was to steal narcotics and narcotics proceeds."

The last question explicitly referred to the use of force, but it did not ask whether Bethel understood that there was a mutual plan or agreement among the conspirators to use force. Instead, it asked whether Bethel acknowledged that it was the intent of at least one of the co-conspirators to use force if necessary. The intent of a single co-conspirator would not necessarily establish that there was an agreement among two or more conspirators to use force as a Hobbs Act robbery conspiracy requires. *See Santos*, 449 F.3d at 97 (noting that a Hobbs Act robbery conspiracy requires "the existence of a conspiracy *to rob*" and "knowing participation in that conspiracy") (emphasis added).

The rest of the record gives reason to doubt that Bethel agreed to the use of force.[6] According to the Government's sentencing memorandum, Marte stated his intent to do a "straight B and E," *i.e.*, a breaking-and-entering or burglary, as distinct from a robbery.[7] The Government's sentencing memorandum further states that "[t]he government has evidence that while guns were found in the car, the co-defendants made a conscious decision not to bring guns with them to do the robbery, in part because *they believed the target apartment was empty*."[8]

In similar circumstances, another court has ruled that evidence of an attempt to break into a residence that was believed to be empty was legally insufficient to support an attempted Hobbs Act robbery conviction. *See United States v. Acosta*, 595 F. Supp. 2d 282, 294 (S.D.N.Y. 2009) (evidence for attempted Hobbs Act robbery was not sufficient where the government had not offered any evidence that the conspirators "expected anyone to be present at [the target]'s home during the break-in" and chose a particular night for the planned break-in "precisely because they thought the house would be empty"); *compare United States v. Katana*, 93 F.4th 521, 539 (1st Cir. 2024) (evidence for Hobbs Act robbery conspiracy was sufficient where there was "evidence from which a jury could reasonably conclude that [the defendant] anticipated the possibility that someone might be home at the time of the break-in" including because of loud music inside and car in driveway outside).

Even if there were evidence that Bethel's co-defendants contemplated the use of force against an occupant, the Government's sentencing memorandum stresses that Bethel

---

[6] When considering whether there is a factual basis for a plea of guilty, a court may not rely on facts adduced after a plea hearing "in accepting a plea." *See Aybar-Peguero*, 72 F. 4th at 486. On the other hand, such facts may be relevant to a court's decision whether to reject a guilty plea (even if by reconsideration of its prior acceptance) or to grant a motion to withdraw a guilty plea.
[7] Doc. #146 at 3.
[8] *Id.* at 2 (emphasis added); *see also* Doc. #67 at 6 (government memorandum in support of detention of Marte stating that "there is some evidence that Marte and his coconspirators believed that the apartment they wanted to rob was empty").

"specifically joined the conspiracy at the very last moment and was not involved in the weeks of planning that led up to the attempted robbery."[9] According to the Government, Bethel "walked into this . . . conspiracy at virtually the last possible minute," and "he cannot be held responsible for what transpired before he arrived," including "the planning of the robbery" and "the first robbery attempt when Allen tried to pry open the door with a crowbar."[10] As the Government states, Marte recruited Bethel "presumably to add more muscle to the operation to force open the door of the target apartment," as distinct from a purpose to have him there to use force against any potential occupants of the apartment.[11]

All in all, I have some doubts that there is an adequate factual basis for Bethel's guilty plea to a Hobbs Act robbery conspiracy. Alternatively, if the factual basis is legally sufficient, I have enough concerns to consider affording Bethel an opportunity to file a motion to withdraw his guilty plea if he has good faith grounds to contend that he did not join the conspiracy with an understanding of its objective to rob rather than merely to burglarize or steal property.

Nevertheless, I am not nearly as familiar with the factual record as the parties, and I may be misunderstanding or overlooking something about the controlling legal principles. Counsel are requested to submit any memoranda on or before **July 15, 2024** on this issue.

---

[9] Doc. #146 at 2.
[10] *Id.* at 7.
[11] *Ibid.* On the other hand, with respect to explaining why Bethel, Porter, and Allen left the apartment building before trying to force their way into the apartment for a second time, the Government's sentencing memorandum states that "[t]he defendants believed that the drug dealers *inside the target apartment* realized they were being robbed and moved the valuable drugs and cash inside." *Id.* at 4 (emphasis added). I am not sure of the timeline or how to reconcile this statement with the Government's earlier statement that the defendants believed the apartment was empty.

It is so ordered.

Dated at New Haven this 2d day of July 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge